UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

SHAKUR PINDER AND ROBERT BALLARD,

                                  Plaintiffs,

-against-

THE CITY OF NEW YORK, POLICE OFFICER MARIO
MAZIER, POLICE OFFICER BORIS BEDOYA #12867,
POLICE OFFICER MYRON WHITE #1715, SERGEANT
MICHAEL CONNERS #2939,

                                  Defendants.

-------------------------------------------------------------------- x

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

13CV5183 (FB)(VVP)

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seek relief for the violation of their rights secured by 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2. The claims arise from an August 12, 2011 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things false arrest and malicious prosecution.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution. Pendent party jurisdiction and supplementary jurisdiction over plaintiffs' state law claims are asserted.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

6. Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and the events occurred within, the boundaries of the Eastern District of New York.

## PARTIES

7. Plaintiffs are citizens of the United States. At all times here relevant, plaintiff Pinder resided in Kings County, City and State of New York and plaintiff Ballard resided in Rock Hill, NY.

8. The City of New York is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. Police Officer Mazier was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, defendant Mazier was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting and assaulting plaintiff without probable cause. On information and belief, at all times relevant hereto, defendant Mazier was under the command of the 79th precinct and is sued in his individual capacity.

10. All others individual defendants ("the officers") are employees of the NYPD, and are sued in their individual capacities.

11. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

12. On August 12, 2011, plaintiffs were in the vicinity of 991 Myrtle Ave, Brooklyn, NY. At approximately 12AM, plaintiff Pinder finished playing a basketball game and was walking home. He was wearing basketball attire and was not carrying a bag. Plaintiff saw several friends from his school and stopped briefly to say hello. Just then, police officers, including defendant Mazier, surrounded plaintiff and the others and placed them under arrest. Approximately nine people were arrested. Plaintiff Pinder was 17 years old with no criminal record.

13. Plaintiff Pinder was searched several times at the scene and later at the 79th precinct. No illegal contraband was found on him or in his vicinity. Nevertheless, plaintiff was separated from the others, taken into a private room while restrained and repeatedly questioned about a firearm the officers claim to have found. He was told his basketball career was over. Plaintiff was frightened, overwhelmed and visibly shaken.

14. Plaintiff Ballard was also in the vicinity of 991 Myrtle Ave on August 12, 2011 at 12AM to visit his mother who lives nearby. He was standing next to his parked car that was still running when the officers surrounded him. He was ordered to stand against the gate where he was searched. He tried to explain that he had been standing next to his car and had no involvement with whoever the police were looking for. Plaintiff was ordered to sit on the ground and be patient.

15. Although no illegal contraband was found on or near plaintiff Ballard, he too was arrested and taken to the 79th precinct. He was questioned extensively about a gun that was

allegedly found at the scene. Plaintiff repeatedly explained that he knew nothing about the gun.

16. Approximately 14 hours after the illegal arrest, plaintiff Ballard was released from the precinct. The Kings County District Attorney Office declined to prosecute the plaintiff. Plaintiff Pinder was brought before a Criminal Court Judge 45 hours after his arrest, charged with possession of a weapon and released without bail. After two additional appearances, all charges were dismissed and sealed.

17. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff, and agreed, shortly after the incident, not to report each others' illegal actions and to fabricate a story and falsely charge plaintiff with offenses, to justify the injuries.

18. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

19. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a. Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

    b. Violation of their right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

    c. Violation of their New York State Constitutional rights under Article 1, Section

4

12 to be free from an unreasonable search and seizure;

d.  Violation of their New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

e.  Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety and separation from family;

f.  Loss of liberty;

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

20. The above paragraphs are here incorporated by reference.

21. Defendants acted under color of law and conspired to deprive plaintiffs of their civil, constitutional and statutory rights to be free from unreasonable search and seizure, due process of law and malicious prosecution under the First, Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiffs under 42 U.S.C. §1983.

22. Defendants falsely arrested plaintiffs and failed to intervene in each other's obviously illegal actions.

23. Plaintiffs have been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

24. The above paragraphs are here incorporated by reference.

25. The City is liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to

continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

26. The City has been alerted to the regular use of false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

27. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers stop and frisk citizens without reason, use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

28. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the

NYPD, once finding misconduct by an officer.

29. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

30. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

31. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiffs' complaints to the CCRB from the first day of the incidents complained of, the City has failed to remedy the wrong.

32. Plaintiffs have been damaged as a result of the deliberate indifference of the City to the

7

constitutional rights of the City's inhabitants.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

 A. In favor of plaintiffs in an amount to be determined by a jury for each of plaintiff's causes of action;

 B. Awarding plaintiffs punitive damages in an amount to be determined by a jury;

 C. Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

 D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: Brooklyn, New York
    January 23, 2014

TO: New York City
  Officer Mario Mazier
  Corporation Counsel Office
  100 Church Street, 4th floor
  New York, NY 10007

  Police Officer Boris Bedoya
  114th Precinct
  34-16 Astoria Blvd.
  Queens, NY 11103

  Police Officer Myron White
  1st Precinct
  16 Ericcson Pl.
  New York, NY 10013

  Sergeant Michael Conners
  Traffic Enforcement Division
  330 West 34th St. Fl.8
  New York, NY 10001

Very truly yours,

*[signature]*

Stoll, Glickman & Bellina, LLP
By: Nicole Bellina
Attorney for Plaintiff
475 Atlantic Ave. 3rd Fl.
Brooklyn, NY 11217
(718) 852-3710
nicole_bellina@yahoo.com